IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HSMY, Incorporated,<br>a Delaware Corporation,<br>a/k/a H.S.M.Y., Inc. | )<br>)<br>)<br>) | C.A. No. 05-818 (JJF) |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | |
| GETTY PETROLEUM MARKETING INC.,<br>a Maryland Corporation. | )<br>)<br>) | |
| Defendant. | ) | |

## HSMY, INCORPORATED'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**PARKOWSKI, GUERKE & SWAYZE, P.A.**
John C. Andrade, Esquire (I.D. #1037)
Basil C. Kollias, Esquire (I.D. #4063)
116 West Water Street
P. O. Box 598
Dover, DE 19903
(302) 678-3262
Attorneys for Plaintiff, HSMY, Incorporated

Dated: February 3, 2006

# TABLE OF CONTENTS

TABLE OF CITATIONS        i

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING        1

CONCISE STATEMENT OF FACTS        2

ARGUMENT        5

    I.      THE STANDARD GOVERNING GETTY'S MOTION TO DISMISS

    II.      COUNT II BOTH STATES A CLAIM UNDER THE DELAWARE RETAIL SALES OF MOTOR FUEL LAW AND SETS OUT A VIOLATION OF STATE LAW THAT IS FURTHER EVIDENCE OF FRAUD, BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

    III.      COUNT III STATES A CLAIM FOR FRAUD

    IV.      COUNTS I AND IV STATE CLAIMS FOR BREACH OF CONTRACT

        A      COUNT I STATES A CLAIM UNDER 6 DEL. C. §2-305

        B.      COUNT IV STATES A CLAIM FOR BREACH OF CONTRACT

    V.      COUNT V STATES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

    VI.      A JURY TRIAL IS NOT WAIVABLE IN AN AGREEMENT BETWEEN A MANUFACTURER AND DEALER PURSUANT TO 6 DEL. C. §2909(3)

    VII.      HSMY HAS ADVANCED THE BASIS FOR TREBLE DAMAGES

    VIII.      ATTORNEY'S FEES AND COSTS

CONCLUSION        15

## TABLE OF CITATIONS

**CASES**                                                                    **PAGE**

*AES Corporation v. Dow Chemical Company*
2001 WL 34367296 (D.Del.), at *2, citing 15 U.S.C.§ 78u-4(b)(1)          10

*Alexander v. Whitman*
114 F.3d 1392, 1392 (3d Cir., May 23, 1997)                              5

*Allapattah Services, Inc. v. Exxon Corp.*
333 F.3d 1248, 1262 FN 16. (11th Cir. 2003)                           11

*In re Brandywine Volkswagen, Ltd.*, 306 A.2d 24,
(Del. Super. 1973) affirmed *Brandywine Volkswagen, Ltd. v.
State Dept. of Community Affairs and Economic Development
Division of Consumer Affairs*, 312 A.2d 632 (Del. Supr. 1973)           9

*Brown v. SAP America, Inc.*
1999 WL 803888 (D.Del. Sept. 13, 1999)                                  8

*In re Burlington Coat Factory Sec. Litig.*
114 F.3d 1410, 1418 (3d Cir. 1997)                                      8

*Carello v. PriceWaterhouseCoopers, LLP*
2002 WL 1454111 at *8 (Del. Super., July 3, 2002)                       9

*Christidis v. First Pennsylvania Mortgage Trust*
717 F.2d 96, 99-100 (3d Cir. 1983)                                      10

*Conley v. Gibson*
335 U.S. 41, 45, 78 S.Ct. 99 (1957)                                     5

*Gaffin v. Teledyne, Inc.*
611 A.2d 467, 472 (Del. Super., August 26, 1992)                        6

*Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*
832 A.2d 116 (Del. Ch., March 18, 2003)                                 9

*H-M Wexford LLC v. Encorp, Inc.*
832 A.2d 129, 145 (Del. Ch., May 27, 2003)                              8,9

*HMGI Courtland Properties, Inc. v. Gray*
749 A.2d 94 (Del. Ch. 1999)                                             7

**CASES**                                                                **PAGE**

*Harman v. Masoneilan International, Inc.*
442 A.2d 487 (Del. Supr., February 9, 1982)                                 9

*Levine v. Metal Recovery Technologies, Inc.*
182 F.R.D. 102 (D.Del. 1998)                                              7,8,9

*Lord v. Souter*
748 A.2d 393, on remand 2001 WL 392237 (Del. Supr. 2000)                    7

*In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund
(Retirement Accounts) II, L.P. Sec. Litig.*
848 F.Supp. 527, 555 (D.Del. 1994)                                          8

*Mathis v. Exxon Corp.*
302 F.3d 448, 454 (5th Cir., August 15, 2002)                              11

*In re In re Nice Sys.*
135 F. Supp.2d 551, 557 (D.N.J. 2001)                                       8

*PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*
857 A.2d 998, 1016 (Del. Ch., 2004)                                        12

*Pollard v. Bailey*
87 U.S. 520 (1874)                                                          5

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*
311 F.3d 198, 216 (3d Cir. 2002)                                            8

*Schneider v. Wilmington Trust Company*
310 A2d. 897, 901 (Del. Ch., 1973)                                          5

*Shapiro v. UJB Fin.*
Corp.I, 964 F.2d 272, 284                                                  10

*Shields v. Citytrust Bancorp, Inc.*
25 F.3d 11124, 1130-31 (2d Cir. 1994)                                       7

*State v. Rodgers*
820 A.2d 1171, 1177 (Del. Super., 2003)                                     6

*Vornado P.S., L.L.C. v. Primestone Inv. Partners L.P.*
821 A.2d 296, 321 (Del. Ch. 2002)                                          10

**CASES**                                                                    **PAGE**

*York Linings v. Roach*
1999 WL 608850 at *2 (Del. Ch., July 28, 1999)                               9

*Zern v. VCI Corp.*, 681 A.2d 1050 (Del. Supr. 1996)                         7

**STATUTES**                                                                 **PAGE**

6 <u>Del. C.</u> §2-305(2)                                                    11, 12

6 <u>Del. C.</u> §2531-36                                                     13

6 <u>Del. C.</u> §2533                                                        13

6 <u>Del. C.</u> §2707                                                        5

6 <u>Del. C.</u> §2909(3)                                                     6, 13

6 <u>Del. C.</u> §2910                                                        5

Fed. R. Civ. P. 12(b)(6)                                                      5

15 U.S.C. §78u-4(b)91                                                         10

**TREATISES**                                                                **PAGE**

2A Moore's Federal Practice ¶9.03                                            9

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed its Complaint on November 4, 2005 in the Superior Court of the State of Delaware in and for Kent County.  On November 30, 2005, Getty Petroleum Marketing Inc. ("Getty") filed its Notice of Removal from Kent County Superior Court to this Court.

On January 4, 2006, Getty filed its Opening Brief in Support of its Motion to Dismiss the Complaint.  Under the Stipulated Briefing Schedule, HSMY's, Answering Brief is due on February 3, 2006.  This is Plaintiff's Answering Brief.  Plaintiff also filed its Amended Complaint on February 3, 2006.

## CONCISE STATEMENT OF FACTS

Plaintiff (HSMY)[1] operated two service stations pursuant to written lease/supply agreements with Getty.  Getty was Plaintiff's landlord and exclusive supplier of Plaintiff's single largest sales item – motor fuel.  Plaintiff was required to purchase all of its motor fuel requirements from Getty and was prohibited by the agreements from purchasing motor fuel elsewhere (Amended Complaint at ¶¶10 and 11).

The agreements between Plaintiff and Getty contain the following provision regarding the price at which motor fuel was to be sold to Plaintiff by Getty, "… The price for the products sold to lessee [HSMY] should be those posted or listed by company [Getty] at the time and place of delivery.  All prices are subject to change by company." (Amended Complaint at ¶12).  Getty frequently charged wholesale prices to Plaintiff that were equal to or higher than the retail prices on the street.  (Amended Complaint at ¶13).  Getty required Plaintiff to maintain checking accounts into which Getty could electronically transfer funds for credit card charges (EFT credits) made at Plaintiff's stations and from which Getty could electronically withdraw funds (EFT debits) for payments of rent, gas purchases, sign and pole charges and rental of credit card equipment.  (Amended Complaint at ¶16).

On or about March, 2002 Getty initiated a fraudulent scheme under which Getty presented Plaintiff with invoices at the time of gas delivery showing one price for the motor fuel and then at the time of EFT Debit from Plaintiff's back account, increasing the amount of the invoice thereby allowing the Defendant to unlawfully increase the prices for motor fuel after it was delivered, while Plaintiff had already set its own retail prices

based on the prices charged by Getty on the invoices provided at the time of delivery.[1]
(Amended Complaint at ¶17).  At all relevant times Getty was aware that the prices on
Plaintiff's invoices were lower than the amounts Getty intended to draft, that Plaintiff
would not know the prices had been increased until after the motor fuel had been sold
at retail, and that Plaintiff would lose a portion of its anticipated profits.  (Amended
Complaint at ¶18).

On April 11, 2002 a meeting was held between representatives of Getty and its
Delaware dealers at which Getty's Vice President of Marketing, Mr. A. R. Chames, (a)
admonished the Delaware dealers, including Plaintiff, for reporting the scheme to the
State of Delaware, (b) refused to provide any pricing relief for the Delaware dealers,
including Plaintiff, and (c) refused to improve the Getty image at the stations operated
by the Delaware dealers, including Plaintiff, stating that, "None of you are worth it." and
advising the Delaware dealers to "get out" if they did not like the way Defendant
operated its business.  (Amended Complaint at ¶20).  After Getty's Delaware dealers
reported the scheme to the Office of Retail Gasoline Sales, Getty increased its prices to
its Delaware dealers, including the Plaintiff, such that the Delaware dealers including
Plaintiff were paying wholesale prices equal to or higher than retail prices being charged
by the Delaware dealers' inner brand competitors.  (Amended Complaint at ¶21).  Getty
assured Plaintiff that no draft would occur until Defendant had transmitted a facsimile
notice of the draft and that the only items that would be drafted would be payment for
rent, gas deliveries, sign and pole charges and credit card equipment rental.  In fact

---

[1] HSMY, Incorporated is a corporation organized under the laws of the State of Delaware on September
15, 1995, the charter of which was voided for non-payment of taxes on March 1, 1998.  On January 13,
2006, a Certificate of Renewal and Revival of Charter was filed with the Delaware Secretary of State
restoring the Corporation.  A copy of that Certificate is attached as Exhibit "A".

Defendant made EFT debits without notice and for items which Plaintiff did not agree to pay by EFT debits. Plaintiff had no means to stop unauthorized EFT debits and Defendant fraudulently charged, attempted to charge or overcharged Plaintiff by EFT debits for maintenance charges, late payment fees, interest charges and miscellaneous charges. (Amended Complaint at ¶42).

Plaintiff was placed under extreme financial hardship due to Getty's actions resulting in, among other things, trying to operate the gas stations with little to no profit and regularly coming up short in attempting to pay the inflated prices charged by Getty. Getty then in turn imposed a requirement of cash payments for all deliveries and withheld credit card receipts forcing Plaintiff to operate with no capital. (Amended Complaint at ¶22). On or about December 5, 2002 Getty sent Plaintiff a termination letter terminating their New Castle franchise due to a "history of returned electronic funds transfers", a situation wholly created by Getty. (Amended Complaint at ¶23). On the same date Getty sent Plaintiff a termination letter terminating their Elkton Road franchise for the same reason. (Amended Complaint at ¶24).

## ARGUMENT

### I.    THE STANDARD GOVERNING GETTY'S MOTION TO DISMISS

Getty correctly states that pursuant to Federal Rule of Civil Procedure 12(b)(6) a Motion to Dismiss should only be granted where Plaintiff is not entitled to relief "under any set of facts that could be proven consistent with the allegations." *Alexander v. Whitman*, 114 F.3d 1392, 1392 (3d Cir. 1997). Further, it is well established that a complaint should only be dismissed on the basis of failing to state a claim when "… it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief. *Conley v. Gibson*, 335 U.S. 41, 45 (1957).

Getty's second paragraph is not relevant to the standard governing its Motion and should not be given any consideration by the Court. To the extent that its arguments are properly included as arguments, plaintiff has responded thereto.

### II.    COUNT II BOTH STATES A CLAIM UNDER THE DELAWARE RETAIL SALES OF MOTOR FUEL LAW AND SETS OUT A VIOLATION OF STATE LAW THAT IS FURTHER EVIDENCE OF FRAUD, BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

Getty argues, "When a statute creates new right and prescribes a remedy, the latter is exclusive." Getty's opening brief ("GOB") at 8, citing *Schneider v. Wilmington Trust Company*, 310 A2d. 897, 901 (Del. Ch. 1973) (citing *Pollard v. Bailey*, 87 U.S. 520 (1874). However, the statute does not prescribe a remedy, but prescribes multiple remedies. For example, under 6 <u>Del. C.</u> §2910, the dealer may sell product and "… <u>shall</u> have a cause of action against the manufacturer for the balance" (emphasis supplied). An action for the balance cannot be brought in the Court of Chancery and can be brought in Superior Court. An action under 6 <u>Del. C.</u> §2707 would be for

replevin and can be brought in Justice of the Peace Courts.

The statute does state as noted by Getty that the various entities <u>may</u> institute an action but since there are other methods to enforce provision of this chapter it is clear that these rights are cumulative and can't be exclusive. See *State v. Rodgers*, 820 A.2d 1171, 1177 (Del. Super., 2003). Therefore, Getty's argument that money damages are not available or that equitable relief is exclusive must fail. In addition, if only jurisdiction in Chancery Court were contemplated, there would be no need for 6 <u>Del. C.</u> §2909(3), which prohibits any provision waiving a jury trial, which is not available in Chancery Court.

The fact that Getty was in violation of Delaware law is relevant and incorporated in the later counts under fraud, breach of contract and breach of implied covenant of good faith.

Any argument Getty had that exclusive jurisdiction lies exclusively in the Delaware Court of Chancery must fail by Getty's removal to the District Court of Delaware which also has equity jurisdiction. Had the case not been transferred to District Court, Plaintiff would have had the option of transferring it to Chancery Court had Plaintiff chosen to.

## III.    COUNT III STATES A CLAIM FOR FRAUD

Getty correctly lists the elements of fraud by citing *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Getty, however, failed to complete the citation. The *Gaffin* court went on to state that fraud does not consist merely of overt representations, but may also occur through deliberate concealment of material facts, or by silence in face of a duty to speak. *Id.* One is equally culpable of fraud who by omission fails to reveal

that which it is his duty to disclose in order to prevent statements actually made from being misleading.  *H-M Wexford, LLC v. ENCORP, Inc.*, 832 A.2d 129, 145 (Del.Ch. May 27, 2003).

Getty goes on to state that HSMY did not allege any material misrepresentations of fact, or present fact, as opposed to promises of future conduct made by Getty.  Getty further claims that HSMY did not allege that Getty's use of the account for EFT debits was false at the time it was made.  Again, Getty looks only at the allegations of improper EFT debits, ignoring the previous allegations of the fraudulent scheme, listed in the Amended Complaint at ¶¶13-26.

Getty also implied that there was no knowledge that fraud was or had been committed.  Scienter can be pleaded by alleging facts that demonstrate both motive and opportunity to commit fraud.  *Levine v. Metal Recovery Tech., Inc.*, 182 F.R.D. 107 (D.Del. 1998).  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 11124, 1130-31 (2d Cir. 1994).  Scienter or intent to deceive requirement for purposes of a fraud claim can be satisfied by a showing of recklessness.  *Lord v. Souter*, 748 A.2d 393, on remand 2001 WL 392237 (Del. Supr. 2000).  Even if Getty can argue that there was no scienter requirement, there is still a case for equitable fraud, which has the same elements of fraud, but with no scienter requirement.  *HMGI Courtland Properties, Inc. v. Gray*, 749 A.2d 94 (Del. Ch. 1999).  To state a prima facia case for equitable fraud, there must be false representations, usually one of fact made by defendant, intent to induce plaintiff to act or refrain from acting, plaintiff's action or inaction taken in justifiable reliance upon representation and damage to the plaintiff as a result of reliance.  *Zern v. VCI Corp.*, 681 A.2d 1050 (Del. Supr. 1996).

7

HSMY's Amended Complaint specifically states at ¶41 who at Getty made the statements or material omissions, and the time period these were made. This was done although according to *Brown v. SAP America, Inc.,* 1999 WL 803888 (D.Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s requirements. It further states that the conversations occurred over the time of the contract. The fraudulent scheme itself was laid out in sufficient detail through the Amended Complaint meeting all the elements of fraud and pleaded with sufficient particularity.

The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997). Rule 9(b) does not require the exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred. *Levine,* at *107* (quoting *In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.,* 848 F.Supp. 527, 555 (D.Del. 1994)). Rule 9(b) does not require the recitation of every material detail of the fraud such as date, location and time, however plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re In re Nice Sys.,* 135 F. Supp.2d 551, 557 (D.N.J. 2001)).

Under Rule 9(b) of the Delaware Superior Court Rules, the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally. *Wexford,* at 146; See also

*Levine v. Metal Recovery Technologies, Inc.*, 182 F.R.D. 102, 105 (D.Del. 1998); See also *York Linings v. Roach*, 1999 WL 608850, at \*2 (Del.Ch. July 28, 1999); See also *2A Moore's Federal Practice* ¶9.03 (the requirement that fraud be stated with particularity does not require particularization of allegations of fraudulent intent). In addition, the Delaware Courts have recognized in similar contexts that the particularity requirement must be applied in light of the facts of the case, and less particularity is required when as in this case the facts lie more in the knowledge of the opposing party than of the pleading party. *Wexford*, at 146, citing *Carello v. PriceWaterhouse Coopers*, 2002 WL 1454111, at \*8 (Del.Super. July 3, 2002).

Elements of actionable fraud consist of false representation of material fact knowingly made with intent to be believed to one, who ignorant of its falsity, relies thereon and is thereby deceived. *Harman v. Masoneilan Intern., Inc.*, 442 A.2d 487 (Del. Supr. 1982). Proof of fraud in the inducement requires establishment of the elements of common law deceit, which include misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying. *Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*, 832 A.2d 116 (Del. Ch. 2003). In a fraud action in a court of law, where it is necessary to establish that the person making the representation did so with intent to defraud, the misrepresentation may be as to a fact peculiarly within the maker's own knowledge, thereby creating a delusion, or such, as to lull the suspicion of a careful man, inducing him to forego further inquiry. *In re Brandywine Volkswagen, Ltd.*, 306 A.2d 24 (Del. Super. 1973), affirmed *Brandywine Volkswagen, Ltd. v. State Dept. of Community Affairs and Economic Development, Division of Consumer Affairs*, 312 A.2d 632 (Del.

9

Supr. 1973).

Getty also stated that certain allegations of fraud were not particular enough, as they were made on "information and belief. If allegations are made on "information and belief", Plaintiff must "state with particularity all facts on which the belief is founded." *AES Corporation v. Dow Chemical Company*, 2001 WL 34367296 (D.Del.), at *2, citing 15 U.S.C.§ 78u-4(b)(1). The court in *AES* concluded that the allegations made upon "information and belief" satisfied the particularity requirement as they contained citations to and quotes from specifically identified documents and conversations. *Id.* The Amended Complaint in ¶14 and ¶19 specifically identified the bases for these allegations. Even without the allegations, fraud has still been plead with sufficient particularity.

As for Getty's claim that HSMY failed to state a claim for actionable fraud, Getty relies on *Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P., 821 A.2d 296, 321 (Del. Ch. 2002)*, which is a Delaware case ruling using New York law. They claimed that there is no fraud, but simply a contract matter. The question of whether or not fraud occurred is a matter of fact for the jury, not one to be decided upon on a motion to dismiss.

The Court has long held that despite the stringent requirements of Rule 9(b), courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. *Shapiro v. UJB Fin.*, Corp.I, 964 F.2d 272, 284 (quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)). More than adequate factual specificity has been provided in the Amended Complaint, giving Getty sufficient notice

of the claims against them.

## IV.   COUNTS I AND IV STATE CLAIMS FOR BREACH OF CONTRACT

### A.   COUNT I STATES A CLAIM UNDER 6 DEL. C. §2-305

### B.   COUNT IV STATES A CLAIM FOR BREACH OF CONTRACT

Getty argues that it is entitled to a safe harbor under the official comments to 6 Del. C. §2-305(2). In support it cites Mathis v. Exxon Corp., 302 F.3d 448, 454 (5th Cir. 2002) and Allapattah Services, Inc. v. Exxon Corp., 333 F.3d 1248, 1262 n. 16 (11th Cir. 2003). Allapattah makes it very clear that the issue of whether the safe harbor would apply was "a factual issue necessary to determine whether Exxon acted in good faith. It therefore was a question for the jury." Id. The complaint sets forth allegations of bad faith, fraud and that Getty intended to drive HSMY out of business. There is no safe harbor here available to Getty, under the allegations of the Complaint. For Getty to prevail on its argument it would have to establish facts that are both clearly disputed and contrary to the allegations of the Complaint, which it cannot do in its Motion to Dismiss. Neither Mathis nor Allapattah found the safe harbor applicable to the franchisor.

Getty has a selected view of the facts, citing the Complaint, which sets forth the pricing provision in the agreement, but ignoring the allegations that Getty in fact increased the price above the price at delivery (Amended Complaint ¶17).

The complaint makes it very clear that HSMY is alleging bad faith on the part of Getty (Amended Complaint ¶18). Under 6 Del. C. §2-305(2), "A price to be fixed by the seller … means a price for him to fix in good faith." HSMY has alleged both that Getty set the price in bad faith and increased the price after it set it in bad faith. Getty is free

to present its facts, if any, that are contrary to those presented by Plaintiff, but not in a Motion to Dismiss.

## V.    COUNT V STATES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

Getty, in its brief, recognizes that the implied covenant of good faith and fair dealing is engrafted upon every contract in Delaware.  The implied covenant further requires Getty to refrain from arbitrary or unreasonable conduct, which has the effect of preventing HSMY from receiving the fruits of the contract.  See *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1016 (Del. Ch., 2004), which in addition states, "The implied covenant applies even where the contract allows a party to exercise discretion." The Delaware Chancery Court then goes on to state as follows:

> "A party may breach the implied covenant of good faith without violating an express term of the contract.  The implied covenant is 'designed to protect the spirit of an agreement, when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain'" Id.

This quotation from *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.* captures the essence of HSMY's claim against Getty in Count V.  The contract if read fairly is one-sided and unconscionable.

Getty argues that HSMY offers no allegations in support of its claim other than the generic incorporation of the allegations of other paragraphs of the Complaint.  On the other hand Getty argues that those other allegations incorporated herein are not breaches of the contract.  The permissibility of alternative pleading is the cornerstone of Complaint drafting.  Plaintiff, HSMY, is free to allege that an action by Getty is a breach of the agreement and/or a breach of the implied covenant of good faith and fair dealing.

The Complaint is replete with examples of the breach by Getty of the implied covenant of good faith and fair dealing. (Amended Complaint ¶¶13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 30, 36, 37, 38, 42, 47,and 52). These allegations of the Complaint support HSMY's claim that Getty breached its implied covenant.

## VI.    A JURY TRIAL IS NOT WAIVABLE IN AN AGREEMENT BETWEEN A MANUFACTURER AND DEALER PURSUANT TO 6 DEL. C. §2909(3)

Getty included in its agreement clauses it was aware were invalid. In 6 Del. C. §2909(3) it states:

> "Every marketing agreement between a manufacturer and a retail dealer shall be subject to the following non-waiveable provisions whether or not they are expressly set forth in the agreement: ... (3) no agreement shall contain any provision which in any way limits the right of either party to a trial by jury..."

Any claim that HSMY waived its right to a jury trial would fail in light of 6 Del. C. §2909(3).

## VII.    HSMY HAS ADVANCED THE BASIS FOR TREBLE DAMAGES

HSMY has amended its Complaint to set forth a claim under the Delaware Deceptive Trade Practices Act under 6 Del. C. §2531-36 and therefore if it prevails it would be entitled to treble damages under 6 Del. C. §2533.

## VIII.    ATTORNEY'S FEES AND COSTS

It is surprising that Getty would even make an argument for attorney's fees given the nature of the disagreement between the parties. This clause probably better than any establishes a total lack of bargaining power and the fact that this is a one-sided, completely unreasonable and unconscionable contract that Getty is attempting to enforce. Paragraph 37 that Getty cites allows attorney's fees for Getty but not for

HSMY.

Delaware law is very clear, that even if a statute or contract provides for attorney's fees, it is solely up to the discretion of the Court whether or not to award attorney's fees. Getty's argument is that if it prevails it should be awarded attorney's fees, but HSMY has no contractual right to attorney's fees and in Getty's view this is a fair and reasonable contract provision. The Court in its discretion should not even consider enforcing this provision, because it is unconscionable given its one-sided nature. While HSMY has made a claim for attorney's fees, it is based on common law claims under fraud or outrageous conduct or statutory provision; it is not based on a one-sided contract clause lacking any mutuality whatsoever.

## CONCLUSION

Getty's Motion to Dismiss should be denied. It is dependent on selective omissions of the relevant facts as alleged in the Complaint. Getty is in clear violation of Delaware law and has breached its contract, breached the implied covenant of good faith and its actions towards HSMY constitute fraud as detailed in the Amended Complaint. Getty is in violation of numerous Delaware statutory provisions and its contract with HSMY is grossly one-sided and unconscionable. This is easily demonstrable in Getty's claim for attorneys' fees under the contract where no such right is contractually provided to Plaintiffs and where Getty attempts to enforce its contractual waiver of a jury trial, when it is aware that this is a violation of Delaware law.

**PARKOWSKI, GUERKE & SWAYZE, P.A.**

*/s/ John C. Andrade, Esquire*
JOHN C. ANDRADE, ESQUIRE (I.D. #1037)

*/s/ Basil C. Kollias, Esquire*
BASIL C. KOLLIAS, ESQUIRE (I.D. #4063)
116 West Water Street
P. O. Box 598
Dover, DE 19903
(302) 678-3262
Attorneys for Plaintiff, HSMY, Inc.

**EXHIBIT "A"**

## STATE OF DELAWARE
## CERTIFICATE OF RENEWAL
## AND REVIVAL OF CHARTER

HSMY Incorporated, a corporation organized under the laws of Delaware, the charter of which was voided for non-payment of taxes, now desires to procure a restoration, renewal and revival of its charter, and hereby certifies as follows:

1.    The name of the corporation is HSMY Incorporated.

2.    Its registered office in the State of Delaware is located at 116 W. Water Street, PO Box 598, City of Dover, County of Kent, State of Delaware 19903 and the name of its registered agent is Parkowski, Guerke & Swayze, Professional Association.

3.    The date of filing of the original Certificate of Incorporation in Delaware was September 15, 1995.

4.    The date when restoration, renewal, and revival of the charter of this company is to commence is the 28th day of February, same being prior to the date of the expiration of the charter. This renewal and revival of the charter of this corporation is to be perpetual.

5.    This corporation was duly organized and carried on the business authorized by its charter until the 1st day of March, 1998, at which time its charter became inoperative and void for non-payment of taxes and this certificate for renewal and revival is filed by authority of the duly elected directors of the corporation in accordance with the laws of the State of Delaware.

IN TESTIMONY WHEREOF, and in compliance with the provisions of Section 312 of the General Corporation Law of the State of Delaware, as amended, providing for the renewal, extension and restoration of charters, ___Wahah Hussin___ the last and acting authorized officer hereunto set his/her hand to this certificate this 30 day of ___January___, 2006.

HSMY INCORPORATED

BY: _____
        Wahah Hussin
Title of Officer: President

File #2544155
CORP\2006\hsmy inc revival.DOC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HSMY, Incorporated, a Delaware Corporation, :    C. A. No. 05-818-JJF
a/k/a H.S.M.Y., Inc.                             :
                          :
                    Plaintiff,       :
                          :
                vs.              :
                          :
GETTY PETROLEUM MARKETING INC.,    :
a Maryland Corporation,              :
                          :
                  Defendant.     :

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY this 3rd day of February, 2006, that a copy of the foregoing HSMY, INCORPORATED'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT was served electronically on the following counsel of record:

         Matt Neiderman, Esquire
         DUANE MORRIS, LLP
         1100 North Market Street, 12th Floor
         Wilmington, DE 19801

                            PARKOWSKI, GUERKE & SWAYZE, P.A.

                            */s/ John C. Andrade*
                            JOHN C. ANDRADE, ESQUIRE, I.D. #1037
                            116 West Water Street, P. O. Box 598
                            Dover, DE  19903
                            (302) 678-3262
DATED:  February 3, 2006             Attorneys for Plaintiff