## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

HSMY, Incorporated,                    )
a Delaware Corporation,                )
a/k/a H.S.M.Y., Inc.,                  )
                                       )
      Plaintiff,                  )
                                       )   C.A. No. 05-818 (JJF)
      v.                          )
                                       )
GETTY PETROLEUM MARKETING              )
INC., a Maryland Corporation.          )
                                       )
      Defendant.                  )


### DEFENDANT GETTY PETROLEUM MARKETING INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS


**DUANE MORRIS LLP**
Matt Neiderman (Del. I.D. No. 4018)
1100 North Market Street, 12th Floor
Wilmington, Delaware  19801
Telephone: 302-657-4900
Facsimile:  302-657-4901

**OF COUNSEL**:

**DUANE MORRIS LLP**
Harvey W. Gurland, Jr., P.A.
(of the Florida Bar)
200 South Biscayne Blvd.
Miami, Florida 33131
Telephone: 305-960-2200
Facsimile:  305-960-2201


Dated:  February 17, 2006

*Attorneys for Defendant*
*Getty Petroleum Marketing Inc.*

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................1

I.    COUNT II OF THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
      UNDER THE DELAWARE RETAIL SALES OF MOTOR FUEL LAW .......................1

II.   COUNT III FAILS TO STATE A CLAIM FOR FRAUD..................................................4

      A.    The Amended Complaint Fails To State An Actionable Claim For Fraud ........... 4

      B.    HSMY's Fraud Claims Lack Particularity.............................................................. 6

III.  COUNTS I AND IV OF THE AMENDED COMPLAINT FAIL TO STATE
      CLAIMS FOR BREACH OF CONTRACT....................................................................10

      A.    The Amended Complaint Fails To State A Claim Under 6 *Del. C.* § 2-305 ........ 10

      B.    The Amended Complaint Fails To State A Claim For Breach Of Contract ......... 11

IV.   COUNT V OF THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
      FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH ...........................12

V.    COUNT VI FAILS TO STATE A CLAIM UNDER THE DELAWARE
      DECEPTIVE TRADE PRACTICES ACT .......................................................................12

      A.    HSMY's Claims Are Outside The Scope Of The Act .......................................... 13

      B.    HSMY Lacks Standing To Bring A Claim Under The Act................................... 14

VI.   HSMY'S AGREEMENT TO WAIVE A JURY TRIAL IS VALID, AS 6 *DEL. C.*
      2909(3) IS INAPPLICABLE ..........................................................................................15

VII.  ATTORNEY'S FEES AND COSTS ...............................................................................17

CONCLUSION.......................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

**Page**

*Ash v. Cort*,
  496 F.2d 416 (3d Cir. 1974)...............................................................3

*Associated/ACC Int'l, Ltd. v. DuPont Flooring Sys. Franchise Co.*,
  2002 U.S. Dist. LEXIS 6464 (D. Del. Mar. 28, 2002) .........................6

*Burkhart v. Widener Univ., Inc.*,
  2003 U.S. App. LEXIS 9004 (3d Cir. Apr. 21, 2003) .........................3

*Carlton Men's Wear, Inc. v. Carlton Hotel Stores, Inc.*,
  1985 Del. Ch. LEXIS 488 (Aug. 15, 1985) ......................................14

*Clark v. Teeven Holding Co., Inc.*,
  625 A.2d 869 (Del. Ch. 1992)...........................................................8

*Dann v. Chrysler Corp.*,
  174 A.2d 696 (Del. Ch. 1961)...........................................................4

*Delaware Solid Waste Auth. v. Eastern Shore Envtl., Inc.*,
  2002 Del. Ch. LEXIS 34 (Mar. 28, 2002) .................................13, 14

*Diamond Elec., Inc. v. Delaware Solid Waste Auth.*,
  1999 Del. Ch. LEXIS 45 (Mar. 15, 1999) .........................................5

*Dionisi v. DeCampli*,
  1995 Del. Ch. LEXIS 88 (June 28, 1995) ........................................15

*First Bank Nat'l Ass'n v. FDIC*,
  79 F.3d 362 (3d Cir. 1996)................................................................2

*Graham v. State Farm Mut. Auto. Ins. Co.*,
  565 A.2d 908 (Del. 1989) ................................................................17

*Grand Ventures Inc. v. Whaley*,
  622 A.2d 655 (Del. Super. 1992) .....................................................15

*H-M Wexford LLC v. Encorp, Inc.*,
  2003 Del. Ch. LEXIS 54 (May 27, 2003) .........................................11

*Kelly v. McKesson HBOC, Inc.*,
  2002 Del. Super. LEXIS 39 (Jan, 17, 2002) ....................................12

*Lotex Communications, Inc. v. Defries*,
  1998 Del. Ch. LEXIS 236 (Dec. 21, 1998)........................................................5

*Mark Fox Group, Inc. v. E.I. duPont de Nemours & Co.*,
  2003 Del. Ch. LEXIS 71 (July 2, 2003) .......................................................5, 7

*Martin v. American Potash & Chemical Corp.*,
  92 A.2d 295 (Del. 1952) ...............................................................................2

*McHenry v. County of Delaware*,
  2005 U.S. Dist. LEXIS 25009 (E.D. Pa. Oct. 24, 2005)................................12

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n. of R.R. Passengers*,
  414 U.S. 453 (1974).....................................................................................1, 2

*Pollard v. Bailey*,
  87 U.S. 520 (1874)..........................................................................................1

*Schneider v. Wilmington Trust Co.*,
  310 A.2d 897 (Del. Ch. 1973)........................................................................1

*Shell Oil Co. v. HRN, Inc.*,
  144 S.W.3d 429 (Tex. 2004)........................................................................10

*Silvia v. Scotten*,
  122 A. 513 (Del. 1923) ..................................................................................4

*Wayman v. Amoco Oil Co.*,
  923 F. Supp. 1322 (D. Kan. 1996)...............................................................10

*Wolf v. Magness Constr. Co.*,
  1994 Del. Ch. LEXIS 214 (Dec. 20, 1994)....................................................9

*York Linings v. Roach*,
  1999 Del. Ch. LEXIS 160 (July 28, 1999) .....................................................8

## STATUTES AND OTHER AUTHORITIES

6 *Del. C.* § 2-305.................................................................................... *passim*

6 *Del. C.* § 2532 .............................................................................................14

6 *Del. C.* § 2901 .............................................................................................16

6 *Del. C.* § 2909 ...................................................................................4, 15, 16

6 *Del. C.* § 2910 ...........................................................................................................2, 3

Walter D. Malcolm, *The Proposed Commercial Code: A Report on Developments from May 1950 through February 1951*,
        6 BUS. LAW. 113 (1951) ...............................................................................................10

# ARGUMENT[1]

**I.    COUNT II OF THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE DELAWARE RETAIL SALES OF MOTOR FUEL LAW**

The Gasoline Sales Law[2] provides, as the remedy for violations of its provisions, that the Attorney General, the Office or any aggrieved person "may institute an action in the Court of Chancery to <u>enjoin</u> any person from engaging in or continuing a practice in violation of [the Gasoline Sales Law]."  6 *Del. C.* § 2911 (emphasis added).  As set forth in Getty's Opening Brief, the conclusion that injunctive relief is the exclusive remedy for nearly all violations of the Gasoline Sales Law begins with a simple but key point: "[W]hen a statute both creates a new right and prescribes a remedy, the latter is exclusive."  *Schneider v. Wilmington Trust Co.*, 310 A.2d 897, 901 (Del. Ch. 1973) (citing *Pollard v. Bailey*, 87 U.S. 520 (1874)).  As the United States Supreme Court explained in *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n. of R.R. Passengers*, 414 U.S. 453 (1974), "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."  In other words, "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."  *Id.* at 458.  The exclusive nature of injunctive relief as a remedy for HSMY's claims under the Gasoline Sales Law is dispositive in this case because HSMY neither seeks injunctive relief in its Amended Complaint nor would have standing to obtain such relief if sought.

---

[1] Getty incorporates by reference the Statement of Facts as set forth in its Opening Brief, none of which are disputed by HSMY in its Answering Brief.

[2] The defined terms used herein shall have the same meaning attributed to them in Getty's Opening Brief in support of its Motion to Dismiss the Complaint.

In its Answering Brief, HSMY first argues that injunctive relief is not an exclusive remedy for its claims because the Gasoline Sales Law "prescribes multiple remedies." (Ans. Br. at 5). Courts have repeatedly held, however, that even where a statute that creates new rights provides for <u>multiple remedies</u>, those remedies are exclusive. *See Nat'l R.R. Passenger Corp.*, 414 U.S. at 458 ("when legislation expressly provides a particular remedy <u>or remedies</u>, courts should not expand the coverage of the statute to subsume other remedies.") (emphasis added).

HSMY's next argument is based on the language of § 2910 of the Retail Gasoline Sales Law, which creates a very specific and limited action by a dealer against a manufacturer in the event the manufacturer fails to make a tender to the dealer for unsold gasoline products within 30 days of termination of the parties' contract. (Ans. Br. at 5). Even setting aside the fact that HSMY is not suing for a violation of § 2910, HSMY's argument fails on at least two levels. First, the fact that § 2910 provides for a legal remedy relating to that specific section of the Gasoline Sales Law actually demonstrates that such relief is not otherwise available for other alleged violations of the Gasoline Sales Law. It is a basic maxim of statutory construction that a statute should not be construed so as to render any of its provisions superfluous or meaningless. *See Martin v. American Potash & Chemical Corp.*, 92 A.2d 295, 299 (Del. 1952) ("It is elementary that in construing a statute every clause must be given effect . . . plaintiffs' proposed construction of Section 28 would render the phrase 'at private sale' superfluous and meaningless. Such a construction is therefore unacceptable."); *First Bank Nat'l Ass'n v. FDIC*, 79 F.3d 362, 367 (3d Cir. 1996) ("It is a black letter rule of statutory interpretation that, if possible, a court should construe a statute to avoid rendering any element of it superfluous."). If HSMY were correct and the Gasoline Sales Law permitted a private party to assert legal remedies for

violations of <u>all</u> of its provisions, then the language of § 2910 providing for a legal remedy with respect to that specific provision would be both superfluous and meaningless.

Another fundamental principle of statutory construction that undermines HSMY's argument is *expressio unius est exclusio alterius* – the specific enumeration of a thing is the exclusion of others. Courts applying this doctrine have repeatedly held that the reference to a specific thing in one section of a statute and the lack of reference in another section connotes intentional exclusion. *See Ash v. Cort*, 496 F.2d 416, 428 (3d Cir. 1974) ("I am persuaded that this is a classic case for the application of Amtrak's second principle which teaches: when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. A legislative schema expressly providing for a private remedy in one title of the Act and not in another title would call into play the familiar principle of statutory construction [reflecting] an ancient maxim -- *expressio unius est exclusio alterius*."); *Burkhart v. Widener Univ., Inc.*, 2003 U.S. App. LEXIS 9004, at *7 (3d Cir. Apr. 21, 2003) ("the incorporation of subsection (a) to the exclusion of all other subsections of § 2000a-3 must be presumed intentional under the statutory canon of *expressio unius*."). Thus, the fact that § 2910 of the Gasoline Sales Law specifically refers to and permits a narrow type of legal remedy, coupled with the lack of any mention of a legal remedy in other provisions of the Gasoline Sales Law, further disproves HSMY's position.

HSMY's final argument is that because the remedies provision of the Gasoline Sales Law contains the word "may," the remedy enumerated therein is somehow not exclusive. As Getty explained in its Opening Brief, however, Delaware courts have rejected the argument that the appearance of the term "may" in a statute prescribing a remedy is intended in any way to expand the statute. Rather, the use of the word "may" merely indicates what a person is permitted to do

under the statute and does nothing to change the exclusive nature of the remedy provided.  *See Silvia v. Scotten*, 122 A. 513, 516 (Del. 1923) ("the fact that the language is permissive (such being the nature of "may") in no wise detracts from the imperative necessity that the employer shall proceed according to one or the other permitted ways.").

In this case, HSMY alleges only that Getty violated § 2909 of the Gasoline Sales Law. Because the exclusive remedy for violations of § 2909 is injunctive relief in the Court of Chancery, and because HSMY does not contend, nor could it, that it has standing to seek injunctive relief for conduct that allegedly took place more than two years ago, Count II of the Amended Complaint should be dismissed for failure to state a claim.

## II.    COUNT III FAILS TO STATE A CLAIM FOR FRAUD

### A.    The Amended Complaint Fails To State an Actionable Claim For Fraud

The first legal principle requiring the dismissal of HSMY's fraud claim is that a breach of contract claim cannot be transformed into one for fraud by simply adding the words "fraudulent" or alleging that a contracting party never intended to perform.  *See Dann v. Chrysler Corp.,* 174 A.2d 696, 700 (Del. Ch. 1961) ("Using the word 'fraud' or its equivalent in any form is just not a substitute for the statement of sufficient facts to make the basis of the charge reasonably apparent.").  In its Amended Complaint, HSMY alleges for its fraud claim only that Getty made "assurances" as to how it would use EFT Debits and that Getty later failed to abide by those assurances – a classic attempt at bootstrapping.  (*See* Am. Compl. ¶ 42).

HSMY's first rebuttal in its Answering Brief is its observation that one of the many cases cited by Getty was decided under New York law and that "the question of whether or not fraud occurred is a matter of fact for a jury, not one to be decided upon a motion to dismiss."  (Ans. Br. at 10).  As set forth above, however, Delaware courts applying Delaware law have consistently held that allegations that a party failed to perform as promised do <u>not</u> amount to fraud and have

granted motions to dismiss on that very basis. In *Diamond Elec., Inc. v. Delaware Solid Waste Auth.*, 1999 Del. Ch. LEXIS 45, at *22 (Del. Ch. Mar. 15, 1999), for example, the Delaware Court of Chancery held that a "breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party never intended to perform," and it therefore granted a motion to dismiss the plaintiff's fraud claims. Similarly, in *Lotex Communications, Inc. v. Defries*, 1998 Del. Ch. LEXIS 236, at *17 (Del. Ch. Dec. 21, 1998) the Court of Chancery held that a contract claim could not "be bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform," and granted a motion to dismiss the plaintiff's fraud claims. Other cases applying Delaware law have resulted in similar conclusions. *See Mark Fox Group, Inc. v. E.I. duPont de Nemours & Co.*, 2003 Del. Ch. LEXIS 71, at *22 (Del. Ch. July 2, 2003) (holding that the plaintiff had alleged no actionable fraud because "[i]n this case, [plaintiff] does not claim that DuPont misrepresented any facts; instead, [plaintiff] claims that DuPont falsely promised to do something--that it would convey WebMD warrants to [plaintiff] in consideration for [plaintiff's] consulting services on the deal . . . a breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party never intended to perform."). HSMY's claim that Getty did not use EFT Debits in the manner it earlier promised is, therefore, not sufficient to state a claim for fraud and should be dismissed.

HSMY's only other rebuttal is that its claims are actionable based on "the previous allegations of the fraudulent scheme, listed in the Amended Complaint at ¶¶ 13-26." (Ans. Br. at 7). HSMY fails, however, to point the Court to the specific representations of material fact that form the basis for its fraud claim (thus suggesting that none exist). Instead, HSMY refers to the very same paragraphs of the Amended Complaint (¶¶ 14 and 20) that it relies upon for its breach

of contract claims and alleges that the same conduct that forms its breach of contract claim also forms the basis for its fraud claim:

> Upon information and belief, the wholesale prices charged to Plaintiff were neither cost-based nor based on competitive wholesale or rack prices, but were based in whole or in part on the retail street prices being charged by plaintiff's competitors, were designed to control plaintiff's profit margin, and to force, de facto, plaintiff into a commissioned agent relationship. This is based upon conversations between the principal of HSMY, Mr. Wassab Hussin, and his wife, Mrs. Shima Hussin, and other Delaware dealers, plus Mr. and Mrs. Hussin's observations of the retail price of competing gasoline stations.

(Am. Compl. ¶ 14). In other words, HSMY is arguing that because Getty's alleged breaches of contract were ill-motivated (*i.e.*, part of a "fraudulent scheme") and that those alleged breaches of contract somehow become actionable as fraud. This Court has flatly rejected such arguments in the past, and Getty respectfully requests that it do so again here. *See Associated/ACC Int'l, Ltd. v. DuPont Flooring Sys. Franchise Co.*, 2002 U.S. Dist. LEXIS 6464, at *21 (D. Del. Mar. 28, 2002) (granting summary judgment for defendant on fraud claim because "even if [the defendant] knew when it entered into the Special Stipulations that the terms would put it in breach of the Perstorp Agreement and that, therefore, it knew that it would not fulfill its obligations under the Special Stipulations, this still would not amount to fraud").

## B.    HSMY's Fraud Claims Lack Particularity

HSMY's fraud claims should also be dismissed as lacking the particularity required by Rule 9(b). As Getty argued in its Opening Brief, the first and most glaring deficiency is HSMY's failure to allege any statements of material fact by Getty that form the basis of its fraud claim. HSMY now asserts in its Answering Brief that it amended its Complaint to identify with more particularity the makers of the allegedly fraudulent statements and the time and circumstances in which the statements were made. Specifically, HSMY points to paragraphs 13 through 26 of its Amended Complaint as setting forth the "fraudulent scheme" which forms the

basis of its fraud claim.  A review of the allegations contained in those paragraphs, however, readily reveals a lack of any actionable statements <u>by Getty</u>.

In paragraph 14 of the Amended Complaint, which HSMY specifically amended in response to Getty's Motion to Dismiss, HSMY alleges that Getty charged unfair and uncompetitive prices to force it into a de facto commissioned agent relationship.  HSMY's amendment now adds that its allegations are "based upon conversations between the principal of HSMY, Mr. Wassab Hussin, and his wife, Mrs. Shima Hussin, <u>and other Delaware dealers</u>, plus Mr. and Mrs. Hussin's observations of the retail price of competing gasoline stations."   (Am. Compl. ¶ 14) (emphasis added).  In paragraph 19, HSMY alleges that when Getty refused to stop the "pricing scheme," it and other dealers reported Getty to the Division of Motor Fuel.   HSMY then alleges that those allegations are "based upon a conversation between the principal of HSMY and <u>Mr. Mike Harrell of the Delaware Office of Retail Gasoline Sales</u>, which occurred shortly after the termination of the franchisees, as well as conversations between the principal of HSMY and other Delaware dealers."   (Am. Compl. ¶ 19) (emphasis added).   Thus, while purporting to set forth the facts describing the fraudulent scheme which serves as the basis for its fraud claim, HSMY fails to identify any representation made by Getty[3] – rather HSMY points only to a "fraudulent scheme" it apparently deduced based on conversation with third parties, such as other Getty franchisees.  Such allegations simply do not amount to representations of fact made by Getty.

---

[3]  The only representations allegedly made by <u>Getty</u> that HSMY points to in the Amended Complaint are the representations set forth in paragraph 42 of the Amended Complaint as to how Getty would use EFT Debits during the term of the Agreements.  As set forth above, however, Getty's assurances of future performance under the parties' Agreements cannot serve as the basis for a fraud claim.  *See Mark Fox Group, Inc.*, 2003 Del. Ch. LEXIS 71, at *22.

HSMY also fails in the Amended Complaint to allege any facts as to how Getty knew that any supposedly fraudulent statements were false at the time Getty made them. If, as HSMY suggests, Getty misrepresented the manner in which it would use EFT Debits over the course of the parties' Agreements, then HSMY must plead facts indicating that Getty knew its representations were false at the time they were made. Rather than pointing to any such facts in its Amended Complaint, HSMY instead argues that scienter can be pleaded by alleging facts that demonstrate motive and an opportunity to commit fraud or by a showing of recklessness. (Ans. Br. at 7). HSMY fails, however, to explain what facts it has pled that show that Getty made statements with "reckless disregard" as to their truth at the time they were made. *See York Linings v. Roach*, 1999 Del. Ch. LEXIS 160, at *10 (Del. Ch. July 28, 1999) (claimant "did not allege that these representations were false at the time [counterclaim defendant] made them, nor that [counterclaim defendant] knew that they were false").

Apparently recognizing the shortcomings in its allegations as to Getty's knowledge that any statements were false when made, HSMY turns to the elements of equitable fraud, noting that equitable fraud requires no showing of intent. (*Id.*). What HSMY overlooks, however, is that it has chosen to seek tort relief for the alleged fraud in connection with the Agreements, but has never sought rescission – the only permissible remedy for a claim of equitable fraud. As Delaware courts have long held, a party asserting a claim of equitable fraud cannot at the same time accept a contract and seek tort damages for its non-performance; rather rescission is the exclusive remedy for a claim of equitable fraud. *See Clark v. Teeven Holding Co., Inc.*, 625 A.2d 869, 877 (Del. Ch.1992) ("Whether a claim for fraud . . . may be brought as a legal or equitable claim depends upon the relief sought. A defrauded party may elect to affirm the challenged contract and seek money damages. He then has an action at law for the tort of deceit.

8

On the other hand, a defrauded purchaser may elect to disaffirm the contract and be restored to the *status quo ante*. In such a case, he would have an equitable action for rescission.") (citations omitted); *Wolf v. Magness Constr. Co.*, 1994 Del. Ch. LEXIS 214, at *12-13 (Dec. 20, 1994) ("Because the Wolfs have affirmed the contract and sought a further remedy in tort, their claim is one for common law fraud, not equitable fraud.").

Finally, as Getty explained in its Opening Brief, HSMY's Amended Complaint fails to allege any facts that show the manner in which HSMY supposedly relied upon representations of fact by Getty to its detriment and how that reliance resulted in harm to HSMY – a point that HSMY fails to specifically defend in its Answering Brief. Instead, HSMY apparently relies on the general principle that Rule 9(b) does not require every detail of the fraud to be pled with particularity, and that a plaintiff may use alternative means of "injecting precision" into the allegations of fraud. (Ans. Br. at 8). What HSMY fails to do in making this argument, however, is to explain what means it used to inject precision into its fraud claims or to point to the specific averments of fact within its Amended Complaint that show reliance and resulting harm.

In sum, HSMY has failed to plead: (i) misrepresentations or omissions of present, material fact made by Getty; (ii) how Getty knew any false representations it made were false at the time it made them; (iii) how HSMY relied on any such representations to its detriment; and (iv) how HSMY was damaged as a direct result of its reliance on Getty's representations. As a result, HSMY's allegations fail to state an actionable claim for fraud, and Count II of the Amended Complaint should therefore be dismissed.

### III.    COUNTS I AND IV OF THE AMENDED COMPLAINT FAIL TO STATE CLAIMS FOR BREACH OF CONTRACT

#### A.    The Amended Complaint Fails To State A Claim Under 6 *Del. C.* § 2-305

As set forth in Getty's Opening Brief, HSMY's claim under 6 *Del. C.* § 2-305 is legally insufficient because HSMY fails to allege discriminatory pricing by Getty – a key element of an open price term claim.  The open price term provision reflected in 6 *Del. C.* § 2-305 was enacted with one primary purpose in mind – to "prevent discriminatory pricing - *i.e.*, to prevent suppliers from charging <u>two buyers with identical pricing provisions</u> in their respective contracts <u>different prices</u> for arbitrary or discriminatory reasons."  *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1346-47 (D. Kan. 1996), *aff'd*, 145 F.3d 1347 (10th Cir. 1998).  The drafters of § 2-305 thus recognized that absent a strong presumption of good faith that could only be overcome by valid allegations of predatory pricing, open pricing provisions would invite spurious claims of bad faith that would always require resolution by a jury.  The drafters therefore included the safe harbor of Comment 3:

> Beyond prohibiting discriminatory pricing, the drafters wished to minimize judicial intrusion into the setting of prices under open-price-term contracts. They understood that requiring sellers in open-price industries, such as the oil and gas industry, to justify the reasonableness of their prices in order to satisfy section 2.305 would 'mean[] that in every case the seller is going to be in a lawsuit' and that every sales contract would become 'a public utility rate case.' The drafters reasonably foresaw that almost any price could be attacked unless it benefitted from a strong presumption. Thus, they adopted a safe harbor, Comment 3's posted price presumption, to preserve the practice of using 'sellers' standard prices' while seeking 'to avoid discriminatory prices.'

*Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 435 (Tex. 2004) (quoting Walter D. Malcolm, *The Proposed Commercial Code: A Report on Developments from May 1950 through February 1951*, 6 BUS. LAW. 113, 186 (1951)).

In its Answering Brief, HSMY does not claim that it has in fact advanced any allegations of discriminatory pricing by Getty (*i.e.*, that Getty charged it different prices than other Getty retailers). Nor does HSMY even rebut the fact that its only allegations of subjective bad faith by Getty are contradicted by other of HSMY's own allegations within the Amended Complaint. Rather, HSMY argues that simply because it has made allegations of bad faith pricing, those allegations must be resolved by a jury. (Ans. Br. at 11). If HSMY is correct, then the drafters of § 2-305 failed, and every distributor of gasoline must defend before a jury every claim of bad faith pricing, no matter how inadequate or internally contradictory the allegations upon which the claim is premised. Getty submits that, as reflected in the cases cited in its Opening Brief, that is not and should not be the law, and it respectfully requests that the Court dismiss Count I of the Amended Complaint.

**B.      The Amended Complaint Fails To State A Claim For Breach Of Contract**

HSMY alleges only two breaches of contract by Getty in the Amended Complaint. The first is HSMY's claim that Getty charged it too much for gasoline and is addressed above. The second is that Getty used EFT Debits to charge HSMY for amounts it did not agree to pay via EFT. (Am. Compl. ¶ 47(B)). As set forth in Getty's Opening Brief, HSMY's allegations of breach relating to EFT Debits are inconsistent with and precluded by the plain language of the Agreements, in which HSMY agreed to give Getty broad discretion to collect any amounts owed to Getty by HSMY through EFT Debits and to set payment terms and methods. (*See* Supply Agr., ¶ 6). HSMY does not dispute in its Answering Brief that the terms of the Agreement permit Getty to so use EFT Debits, nor does HSMY otherwise address Getty's argument. Accordingly, HSMY's breach of contract claim in Count IV of the Amended Complaint should be dismissed for failure to state a claim. *See H-M Wexford LLC v. Encorp, Inc.*, 2003 Del. Ch. LEXIS 54, at *18 (May 27, 2003) ("a complaint may, despite allegations to the contrary, be

dismissed where the unambiguous language of the documents upon which the claims are based contradict the complaint's allegations"). *See also McHenry v. County of Delaware*, 2005 U.S. Dist. LEXIS 25009, at *44 (E.D. Pa. Oct. 24, 2005) ("Plaintiff's failure to mention this issue in his summary judgment response constitutes an abandonment of that claim.").

## IV.     COUNT V OF THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

A valid claim for breach of the implied covenant arises only in rare circumstances and only where the subject matter of the implied terms <u>is not expressly addressed by the parties' agreement</u>. *See, e.g., Kelly v. McKesson HBOC, Inc.*, 2002 Del. Super. LEXIS 39, at *31 (Jan, 17, 2002) ("The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract."). While HSMY argues in its Answering Brief that its claim for breach of the implied covenant is permissible as an alternative pleading to its breach of contract claim (Ans. Br. at 12), HSMY fails to explain how its claim is viable in light of the express terms of the Agreements, and HSMY also fails to identify the specific implied term or terms it believes Getty breached. HSMY's claim for breach of the implied covenant should therefore be dismissed for failure to state a claim.

## V.     COUNT VI FAILS TO STATE A CLAIM UNDER THE DELAWARE DECEPTIVE TRADE PRACTICES ACT

HSMY's Amended Complaint now contains a claim for violation of the Delaware Deceptive Trade Practices Act.[4]  HSMY's claim should be dismissed both because HSMY has

---

[4] Although HSMY requested treble damages in its original Complain, it failed to advance any basis for such damages. (See Getty's Opening Brief, at 22).  HSMY thus included Count VI in its Amended Complaint, which purports to advance a claim under the Delaware Deceptive Trade Practices Act.  Rather than separately moving to dismiss that claim, Getty addresses it here.

failed to plead any conduct by Getty that is actionable under the Deceptive Trade Practices Act

and because HSMY lacks standing to bring a claim under the Act.

### A.    HSMY's Claims Are Outside The Scope Of The Act

HSMY has failed to allege any conduct by Getty that falls within the scope of the Act.

As set forth at 6 *Del. C*. § 2532, a person engages in a deceptive practice when that person:

> (1)  Passes off goods or services as those of another;
> (2)  Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3)  Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
> (4)  Uses deceptive representations or designations of geographic origin in connection with goods or services;
> (5)  Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
> (6)  Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
> (7)  Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
> (8)  Disparages the goods, services, or business of another by false or misleading representation of fact;
> (9)  Advertises goods or services with intent not to sell them as advertised;
> (10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
> (11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or
> (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 *Del. C.* § 2532(a).

Delaware courts applying the Deceptive Trade Practices Act have explained that it was

"intended to provide a remedy to persons likely to suffer pecuniary harm for conduct involving

either <u>misleading identification of business or goods or false or deceptive advertising</u>."

*Delaware Solid Waste Auth. v. Eastern Shore Envtl., Inc.*, 2002 Del. Ch. LEXIS 34 at *16 (Del.

Ch. Mar. 28, 2002) (emphasis added).  To obtain relief under the Deceptive Trade Practices Act, "there must be some nexus between the allegedly deceptive conduct and the impact of that conduct on _customers_."  *Carlton Men's Wear, Inc. v. Carlton Hotel Stores, Inc.*, 1985 Del. Ch. LEXIS 488 at \*5 (Del. Ch. Aug. 15, 1985) (emphasis added).  The Act thus "encompasses two broad areas: (i) false or misleading use of trademarks or other trade identification and (ii) deceptive advertising."  *Delaware Solid Waste*, 2002 Del. Ch. LEXIS 34 at \*16.

HSMY does _not_ allege any misuse of trademarks or false advertising resulting in confusion among consumers.  Rather, the sole ground HSMY offers in support of its claim under the Deceptive Trade Practices Act is the allegation that Getty "invoiced at prices different than it charged Plaintiff at delivery and operated its EFT credits and debits so as to cause actual confusion or misunderstanding."  (Am. Compl. ¶ 52).  HSMY makes no attempt to incorporate the language of § 2532 into its Complaint or to identify which of the twelve enumerated types of prohibited conduct Getty allegedly engaged in.  HSMY might argue that its Amended Complaint sets forth a claim under § 2532(a)(12), which prohibits "any other conduct which similarly creates a likelihood of confusion or misunderstanding."   However, even a claim under § 2532(a)(12) requires "a likelihood of public deception."  *Delaware Solid Waste*, 2002 Del. Ch. LEXIS 34 at \*18.  HSMY has made no allegations of public or consumer deception, and none can be fairly implied from the allegations of the Amended Complaint.  Accordingly, Count VI should be dismissed for failure to state a claim.

**B.    HSMY Lacks Standing To Bring A Claim Under The Act**

The Deceptive Trade Practices Act prohibits a person from engaging in any of twelve enumerated categories of "deceptive trade practices" while acting in the course of a business. With respect to remedies, the Act provides that "a person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity,"

14

and "proof of monetary damage, loss of profits, or intent to deceive is not required."  6 *Del. C.* § 2533(a).

As Delaware courts have explained, a party bringing a claim under the Deceptive Trade Practices Act must "have a basis for injunctive relief."  *Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88 at *38 (Del. Ch. June 28, 1995) (explaining that the Act does not provide for damages "in the absence of a claim for injunctive relief"); *accord Grand Ventures, Inc. v. Whaley,* 622 A.2d 655, (Del. Super. 1992) ("The relief which may be granted to a plaintiff under this act is an injunction to stop unlawful conduct and only a plaintiff with standing to seek such a remedy may seek the treble damages provided for in the act").  Because a proper plaintiff under the Act must have standing to seek injunctive relief, the Act does not serve as a vehicle for redress "after the immediacy of the grievance dissipates."  *Dionisi*, 1995 Del. Ch. LEXIS 88 at *39.  In other words, "when the press for instant action eases, so does the basis for possible concomitant damages."  *Id.*; *see also Grand Ventures*, 622 A.2d at 662 (holding that the plaintiff had no standing to obtain injunctive relief where "any deception to [the plaintiff] occurred in the past").

As HSMY alleges in the Amended Complaint, it sold its Getty franchises nearly three years ago.  (Am. Compl. ¶¶ 25-26).  Not only has the immediacy of HSMY's grievance therefore dissipated, but so has any possibility of future grievance.  HSMY thus lacks any basis for seeking injunctive relief - indeed, HSMY does not even request any injunctive relief, and HSMY's claim under the Deceptive Trade Practices Act should therefore be dismissed.

## VI.    HSMY'S AGREEMENT TO WAIVE A JURY TRIAL IS VALID, AS 6 *DEL. C.* 2909(3) IS INAPPLICABLE

HSMY argues in its Answering Brief that the jury trial waiver to which it agreed in the Agreements is invalid under § 2909(3) of the Gasoline Sales Law, which prohibits a jury trial waiver in agreements between a <u>manufacturer</u> and a retail dealer.  (Ans. Br. at 13).  HSMY's

argument is flawed because, as its own allegations concede, Getty is not a "manufacturer" for purposes of § 2909(3), and the jury trial waiver HSMY agreed to is therefore valid.

Section 2901 of the Gasoline Sales Law defines a manufacturer as "every <u>producer</u> or <u>refiner</u> of petroleum products, or the <u>producer</u> or <u>fabricator</u> of any automotive product sold or distributed by a service station."  HSMY does not allege, because it cannot, that Getty is a "manufacturer" for purposes of § 2909(3), rather HSMY alleges that Getty is a "<u>marketer</u> of Getty branded motor fuel and petroleum products in Delaware, Pennsylvania, New Jersey, Maryland and elsewhere . . . ."  (Am. Compl. ¶ 6) (emphasis added).

Recognizing that Getty is not a "manufacturer" as that term is defined in the Gasoline Sales Law, HSMY alleges that Getty was acquired by Lukoil Americas Corporation in January 2001 and that "Lukoil is a refiner of petroleum."  (Am. Compl. ¶ 5).  As explained, § 2901 of the Gasoline Sales Law defines a "manufacturer" to include producers and refiners, but it does not go any further than that.  Specifically, § 2901 does not include within the definition of "manufacturer" persons or entities affiliated with a "manufacturer."  This definition is in contrast to the divorcement provision of the Gasoline Sales Law, found in Section 2905, which specifies who may operate retail gas stations, and which expands the definition of "manufacturer" to specifically apply to "a subsidiary company."  6 *Del. C.* § 2905(a).  The definition is also in contrast to similar statutes, such as the Delaware Motor Vehicle Franchising Practices Act, in which a manufacturer is specifically defined to include affiliated entities and distributors:

> "Manufacturer" means any person . . . who manufactures or assembles new motor vehicles . . . including any person, partnership or corporation *which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said motor vehicles*.  Additionally, the term manufacturer shall include the following terms:                  a.

> "Distributor" which means any person . . . who in whole or in part offers for sale, sells or distributes any new motor vehicle to new motor vehicle dealers . . . .

6 *Del. C.* § 4902(1) (emphasis added).

Thus, like other statutes, the Gasoline Sales Law provides a specific definition of manufacturer, however, unlike other statutes, the Gasoline Sales Law does not define a manufacturer to include affiliated entities. Because Getty is not a "manufacturer," HSMY's jury trial waiver is valid and enforceable.

## VII.    ATTORNEY'S FEES AND COSTS

HSMY agreed to reimburse Getty for reasonable attorney's fees and expenses resulting from defending "any claim brought against [Getty] by [HSMY] against which Getty successfully defends." (Supply Agreement, ¶ 37). HSMY attempts to avoid this provision of the Supply Agreement by arguing in its Answering Brief that the provision is one-sided and "unconscionable." (Ans. Br. at 13). HSMY cites no authority for the proposition that a bargained-for fee shifting provision is *per se* unconscionable, nor does HSMY explain how it can selectively enforce the provisions of the Agreements that it deems favorable while attempting to reject those it now deems unfavorable. *See Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989) (holding that even where a contract is one of adhesion (which HSMY does not allege here), "the adhesive nature of a contract does not allow the non-drafting party to reject contract terms that he later finds unappealing."). HSMY's attempt to now deem the Agreements "unconscionable" rings especially hollow given that HSMY operated its stations under the Agreements for more than seven years, renewed those Agreements on more than one occasion and entered into Agreements for not one, but two separate stations at different times. (*See* Am.

Compl. ¶¶ 3-4, 10).  HSMY's attempt to selectively avoid the fee-shifting provision of the Agreements should therefore be rejected, and Getty respectfully requests an award of its fees to the extent any of HSMY's claims are dismissed.

## CONCLUSION

For the foregoing reasons, Getty respectfully requests that the Court enter an order in its favor, dismissing the Amended Complaint in its entirety and awarding Getty its fees and costs associated with this action.

**DATED:** February 17, 2006

**OF COUNSEL:**

**DUANE MORRIS LLP**
Harvey Gurland, Jr., P.A. (*of the Florida Bar*)
200 South Biscayne Blvd., Suite 3400
Miami, Florida  33131
Tel:     305.960.2200
Fax:    305.960.2201

**DUANE MORRIS LLP**

/s/ Matt Neiderman
Matt Neiderman (Del. I.D. No. 4018)
1100 North Market Street, 12th Floor
Wilmington, Delaware  19801
Tel:     302.657.4900
Fax:    302.657.4901

*Attorneys for Defendant*
*Getty Petroleum Marketing Inc.*

DM1\554353.1