# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HSMY, Incorporated,<br>a Delaware Corporation,<br>a/k/a H.S.M.Y., Inc., | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | C.A. No. 05-818 (JJF) |
| v. | )<br>) | |
| GETTY PETROLEUM MARKETING<br>INC., a Maryland Corporation. | )<br>)<br>) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF**

1. Identify each and every separate element of damages that you sustained and seek to recover from Getty and specify how those damages were calculated, including the precise dollar amount of every element of damages, the date every separate element of damages was incurred, the identity of every person having knowledge regarding any element of damages, and the method used to calculate each element of damages.

ANSWER: Damages report is being prepared by Plaintiff's expert, Charles H. Sterner, CPA, and will be submitted when completed. The **individuals having knowledge regarding damages are: Shima Hussin; Wahab Hussin; Plaintiff's expert; Prakashbai Patel, purchaser of the New Castle station; and Phyllis Hines.**

2. Identify each and every instance in which you claim Getty charged you unreasonable and/or uncompetitive prices for motor fuel as alleged in the Amended Complaint and, for each such instance:

> a. Identify the per-gallon amount Getty charged you for motor fuel;
> b. Describe in detail the complete basis for your allegation that the per-gallon price charged by Getty was unreasonable and/or uncompetitive; and
> c. Identify any communications between you and Getty relating to price charged by Getty.

**ANSWER:** See response to Interrogatory number 1, and the following:

> **a. This information is in Getty's possession and control.**
>
> **b. The wholesale price charged by Getty exceeded the retail market price in the area and Getty was aware of this.**
>
> **c. Shima Hussin and Wahab Hussin complained often about the price to Bernard Walker, Regional Manager for Getty, David Schmidt, Territory Sales Manager for Getty and Mr. Goodman from Getty.**

3. Identify each and every instance in which you claim Getty changed the price of motor fuel sold to you after delivery as alleged in paragraphs 17 and 30 of the Amended Complaint and, for each such instance:

> a. Identify who, if anyone, at Getty you reported the overcharge to;
> b. Identify the amount of the overcharge; and
> c. State whether the overcharge was credited back to your account or otherwise rectified by Getty.

**ANSWER:** **The delivery sheet would be delivered with the delivery of gas and had one price and the invoice arrived five to seven days later. Getty having withdrawn the money and the price on the invoice, which the retail price was based on was higher than on the delivery sheet. This**

   happened numerous times and a computation of each instance is being prepared and will be provided when completed.

   a.   David Schmidt

   b.   See response to number 3 above.

   c.   In some instances, it is believed, it may have been credited, but Getty was never clear on the crediting back or rectifying of this amount

4. For each representation or omission alleged in the Amended Complaint for which you seek recovery from Getty:

   a.   Identify the identity of the person who made the representation or omission and the person to whom it was made;
   b.   Identify the exact date the representation or omission was made and the means in which it was communicated (*i.e.*, telephone, in-person, etc);
   c.   Describe in detail the representation or omission and the manner in which you relied on the representation or omission; and
   d.   Identify any damages you claim to have incurred as a result of your reliance on the representation or omission.

**ANSWER:**

   a.   A representative from Getty, who has since left the company, made the representation to Shima and Wahab Hussin.

   b.   Don't currently know the exact dates but believe it was early November, 2001 and it was in person at the New Castle station.

   c.   The representation was that by switching to the TCVA program that Plaintiff would make more money and also that Plaintiff had no choice in whether to switch to this program. Defendant also represented that it was Lukoil that owned the refinery and thus was the manufacturer of the gasoline. In reliance on the

3

representation Plaintiff signed the TCVA Agreement. Defendant had numerous omissions about the program including but not limited to the following:

1. **That the price would be higher than it previously was and would not be competitive;**

2. **That Getty would deliver at one price and invoice at another price;**

3. **That it would take such a long time to credit Plaintiff for the sale of gasoline;**

4. **Failure to make timely EFT credits;**

5. **That Getty would make EFT debits without notice;**

6. **Getty charged a surcharge on credit charges over $50.00;**

7. **Getty made EFT debits without notice and for items not agreed to by Plaintiff;**

8. **That Plaintiff's prior profitable business would become unprofitable solely due to Defendant's change in program.**

    d.    See Response to Interrogatory number 1.

5. If it is your contention, as alleged in paragraph 13 of the Amended Complaint, that Getty frequently charged you wholesale prices for motor fuel that were equal to or higher than the retail prices on the street, identify each and every such instance and, for each such instance for which you seek recovery from Getty:

4

    a.    Identify the per-gallon price Getty charged you for the motor fuel;

    b.    Identify the amount you charged retail customers for the motor fuel;

    c.    Identify all "prices on the street," by station name, whether it was branded or unbranded motor fuel, the address and per-gallon price for each grade, that were equal to or lower than the price Getty charged you for the motor fuel;

    d.    State the source of the information provided in response to Interrogatory 5(c) above; and

    e.    State whether you asked for or received a temporary competitive allowance or other financial assistance from Getty at or around the time of each such instance.

**ANSWER:** **Getty is required to document through a price survey the existing market conditions in the dealer market. The market survey is to include the competitive gasoline stations and the type of gasoline and a description of the competitive facilities and the retail posted prices under Paragraph II of the TCVA program. Getty is in possession of this survey and this survey has been or will be requested from Getty.**

    a.    **Getty is in possession of this information.**

    b.    **The Delivery Sheets should have the retail price and Getty has a copy of this information.**

    c.    **See Response to Interrogatory number 5 above.**

    d.    **See Response to Interrogatory number 5 above.**

    e.    **Yes in December, 2001. The Request for TCVA assistance is attached to the Request for Production.**

6.    Describe the factual and legal basis for your allegations in paragraphs 30 and 31 of the Amended Complaint that Getty set the prices it charged you for motor fuel in bad faith.

5

**ANSWER:** **The wholesale prices charged to Plaintiff exceeded the retail prices and Getty was aware of this and arbitrarily set the TCVA allowance. In addition the invoice prices exceeded the delivery prices.**

7. Identify all persons with knowledge of any of the allegations of the Amended Complaint and, for each such person, describe the nature of the person's knowledge.

**ANSWER:** **See response to Interrogatory number 1 and also Michael Ziadat, potential purchaser of the Elkton Road station.**

8. Identify all other Delaware Getty dealers or lessees, past or present, with whom you have discussed this action, the allegations of the Amended Complaint or the facts giving rise to the Amended Complaint and, for each such person, describe the date and nature of your discussions.

**ANSWER:** **Phyllis Hines and Robin Ridgaway. Discussed the problems alleged in the Amended Complaint with these two other Delaware Getty dealers, who were expressing similar problems.**

9. For every time period for which you seek recovery in this action, identify the name, address, whether a brand was displayed or if unbranded motor fuel was sold of every retail motor fuel station with which you competed for sales of motor fuel, together with all facts upon which you contend that you competed with each such identified station.

**ANSWER:** **See response to Interrogatory number 5.**

10. Identify all communications between you and Getty or any other person from January 1, 2001 to the present relating to the price charged by Getty to you for motor

6

fuel, the use of Electronic Funds Transfer at the Elkton Road Station or the New Castle Station, the Agreements or any of the allegations of the Amended Complaint.

**ANSWER:** **The communications were between Shima and Wahab Hussin and representatives and Getty and were usually verbal and any written communications will be produced in response to the Request for Production.**

11. Identify who, if anyone, representing or otherwise affiliated with you communicated any alleged overcharges to Getty or any other person from January 1, 2001 to the present.

**ANSWER:** **Shima and Wahab Hussin.**

12. If you contend that you communicated any of the allegations of the Amended Complaint or the facts giving rise to the Amended Complaint to Getty prior to the filing of this action, identify all such communications, including, without limitation, the nature of each such communication, the method or form of each such communication, the time and date of each such communication and the parties to each such communication.

**ANSWER:** **See response to Interrogatory number 2.c.**

13. Describe the factual and legal basis for your allegation in paragraph 14 of the Amended Complaint that the prices charged by Getty for motor fuel were designed to control your profit margins and to force, de facto, you into a commissioned agent relationship.

**ANSWER:** **The wholesale process exceeded the local retail prices of the local competitors and the profit was solely determined by Getty's arbitrary**

7

> determination of the TCVA allowance, see the allowance in Paragraph 14 of the Amended Complaint.

14. Describe the factual and legal basis for your allegation in paragraph 22 of the Amended Complaint that Getty's actions placed you under extreme financial hardship.

**ANSWER:** Paragraph 22 includes the factual basis and the earlier stated factual allegation in the Complaint.

15. Describe the factual and legal basis for your allegations in paragraph 16 and 17 of the Amended Complaint relating to the fraudulent scheme allegedly initiated by Getty in or around March 2002.

**ANSWER:** The fraudulent scheme is set out in paragraph 17 and the factual basis is set out therein.

16. If it is your contention that Getty breached any implied covenant in or relating to the Agreements, describe the factual and legal basis for your contention, including each term that you contend should be implied and the manner in which Getty breached each such term.

**ANSWER:** Getty breached the implied covenant of good faith and fair dealing, which is engrafted upon every contract in Delaware. The Amended Complaint is replete with examples of the breach of Getty of this implied covenant (Amended Complaint ¶¶13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 30, 36, 37, 38, 42, 47 and 52).

17.  If you contend that Getty is a "manufacturer" for purposes of the Delaware Retail Gasoline Sales Law, 6 *Del. C.* §§ 2901, et seq., describe the factual and legal basis for your contention.

ANSWER:  **6 Del. C. § 2901(5) defines "Manufacturer" as every producer or refiner of petroleum products, or the producer or fabricator of any automotive product sold or distributed by a service station. LUKOIL acquired Getty Petroleum Marketing, Inc. in November, 2000. Getty Petroleum marketing is a wholly owned subsidiary of LUKOIL Americas, which in turn is a wholly owned subsidiary of LUKOIL Oil Company, the leading vertically integrated oil company in Russia. Getty Petroleum Marketing, Inc.'s two major brands are LUKOIL and GETTY. Per getty.com and lukoilamericas.com, LUKOIL markets itself as Russia's number one refiner with a total capacity of 1.15M bpd (including overseas assets). Per the getty.com website, LUKOIL operates a total of 3,940 retail outlets of which 1,470 are in Russia, 1,370 are in the United States, and approximately 1,100 are located in Europe. The website furthermore specifically lists four current Delaware retail locations, of which the Basin Road store is listed.**

17.  For any document covered by Defendant's First Request for Production that has been destroyed or discarded state the following:

   a.  the identity of the document (author, recipients, date and summary of the contents);
   b.  the date the document was destroyed or discarded;
   c.  all reasons why the document was destroyed or discarded;

9

  d.  the identity of all persons who participated in the decision to destroy or discard the document;

  e.  your best recollection of the contents of the document.

**ANSWER:**  **To Plaintiff's knowledge no documents covered by Defendant's First Request for Production were destroyed.**

            PARKOWSKI, GUERKE & SWAYZE, P.A.

            */s/ John C. Andrade*
            JOHN C. ANDRADE, ESQUIRE, I.D. #1037
            116 West Water Street, P. O. Box 598
            Dover, DE  19903
            (302) 678-3262
DATED:  April 24, 2006      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HSMY, Incorporated, a Delaware Corporation, a/k/a H.S.M.Y., Inc. | : | C. A. No. 05-818-JJF |
| Plaintiff, | : | |
| vs. | : | TRIAL BY JURY OF TWELVE DEMANDED |
| GETTY PETROLEUM MARKETING INC., a Maryland Corporation, | : | |
| Defendant. | : | |

STATE OF DELAWARE   *
                    * ss:
COUNTY OF KENT      *

BE IT REMEMBERED, that on this 20th day of April, A.D. 2006, personally appeared before me, the subscriber, a Notary Public for the State and County aforesaid, SHIMA HUSSIN, who being duly sworn by me according to law did depose and say that the answers to the foregoing Interrogatories are true and correct to the best of her knowledge, information and belief.

_____
SHIMA HUSSIN, Secretary, HSMY, Inc.

SWORN TO and subscribed before me the day and year aforesaid.

_____
Notary Public

[Notary Seal: Nancy Colleen Smith, Commission Expires 03-07-07, State of Delaware]