# EXHIBIT "D"

LAW OFFICES

# PARKOWSKI, GUERKE & SWAYZE
PROFESSIONAL ASSOCIATION

116 WEST WATER STREET
P.O. BOX 598
DOVER, DELAWARE 19903
302-678-3262
FAX: 302-678-9415

F. MICHAEL PARKOWSKI
I. BARRY GUERKE
DAVID S. SWAYZE
CLAY T. JESTER
JEREMY W. HOMER
JOHN C. ANDRADE
MARK F. DUNKLE
WILLIAM A. DENMAN
MICHAEL W. ARRINGTON
CHRISTINE P. SCHILTZ
MICHAEL W. TEICHMAN
BASIL C. KOLLIAS
ANNE HARTNETT REIGLE

GEORGE F. GARDNER, III
OF COUNSEL

WILMINGTON OFFICE
800 KING STREET, SUITE 203
WILMINGTON, DE 19801-0369
302-654-3300
FAX: 302-654-3033

May 26, 2006

Matt Neiderman, Esquire
Duane Morris, LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

**RE: HSMY, Incorporated vs. Getty Petroleum Marketing Inc.
United States District Court for the District of Delaware, C. A. #05-818 (JJF)**

Dear Matt:

This is in response to your letter of May 17, 2006. You purportedly identified several deficiencies in the responses recently served by Plaintiff to your First Interrogatories and First Request for Production of Documents. While we would disagree that there were deficiencies in the responses, we have nevertheless responded to every alleged deficiency below. Many of the alleged deficiencies that you've indicated in the interrogatory responses, we believe are because your interrogatory requests are best addressed in depositions. When you ask for verbal communications between parties where there are no written records of those communications, it is difficult, time consuming and unduly burdensome to have to respond in interrogatory form, when in a deposition that response could be given and any follow up inquiries could be made. It has been our experience that these types of interrogatories have routinely been answered on that basis and further exploration was through depositions.

With regard to the damages report, I apologize, I thought we had indicated that our expert was still working on it and was unable to complete it until we had received your responses to our discovery requests that will be filed next week. When we finish reviewing all of HSMY's documents, it became clear that there were documents that were not in the possession of HSMY and that our damages expert indicated he needed before he could complete his report.

Matt Neiderman, Esquire
May 26, 2006
Page 2 of 4

Interrogatory Responses:

1. I'm not sure of where you came up with the figure of $75,000.00, but I do believe there is a Certification of Value of in excess of $100,000.00. Damages are in part based on the reduced value of the New Castle and Elkton Stations. The New Castle Station sold for approximately $110,000.00. It had been purchased fifteen years earlier for $120,000.00 and it was estimated at the time that had it not been for Getty's actions that the New Castle Station would have been worth approximately $500,000.00. This was based on volume, location, etc. and given the same criteria, it was estimated that the Elkton Station would have been worth approximately $250,000.00. In addition to this there were damages based on Getty's actions during the period of time from December, 2001 that the Plaintiff operated and lost income because of Getty's actions. In addition there is a claim for punitive damages. The expert damages report would address these damages and I expect that to be submitted thirty days after responses from Getty are received.

2.a. You asked for the amount per gallon that Getty charged for motor fuel. Obviously this charge changed on a virtual daily basis. When we reviewed the documents in the possession of HSMY, it was determined that there may have been some missing information. It is expected that Getty's documents would be more complete and thus Getty is in a far better position to provide this information than is HSMY. If HSMY disagrees with any of the information provided by Getty, we would certainly point that out, and further, Getty is free to review all of the documents in HSMY's possession that reference the per gallon amount. When and if a compilation of this information is made it will be provided to Getty.

2.b. Getty was required under the Agreement between it and HSMY to perform a Market Survey for the relevant time period. Getty, to date, has not provided this survey to HSMY as it is required to do under the contract. This survey would presumably have the information that you've requested.

2.c. The answer was responsive and you are free to take a deposition if you'd wish to more fully explore this response regarding the verbal communications.

3. No additional response required.

4.a. The Hussins could not recall the name. After discovery of Getty is taken and the name is disclosed it will be provided.

Matt Neiderman, Esquire
May 26, 2006
Page 3 of 4

4.c.  The manner in which Plaintiff relied on the omissions was that they signed the TCVA Agreement.

5.  See response to interrogatory number 2.b. above. In addition, the Hussins were aware at the time of the prices Getty was charging and the competitor's retail prices and the Getty prices were higher. You are free to explore more fully in deposition but nothing further is required in response to this interrogatory.

6.  See response to interrogatory number 5 above.

7.  You assertion is incorrect. The only individual who's knowledge was not identified was Phyllis Hines, whom Getty is well aware of and Getty is well aware of her knowledge relevant to this matter.

8.  The response to this interrogatory is complete. You are free to take a deposition for any further exploratory information you wish in response.

9.  Your interpretation of Interrogatory number 9, we would object to as being unduly burdensome. After receipt of the Market Survey to be provided by Getty, if Plaintiff disagrees then Plaintiff will add whatever competitive stations need to be added.

10. Again, to the extent that you want a more complete response, you can explore this further in a deposition.

11. Are you sure you don't want to reconsider, given that you've questioned every single interrogatory response other than number 11?

12. Again, you are free to explore this further in a deposition.

13. It appears upon an arbitrary method Getty set the prices under the TCVA Program and this appeared to force Plaintiff into a commissioned agent relationship.

14. The hardship was Getty's delays in disbursing money owed to Plaintiff and by charging higher prices on invoices than delivery sheets thus causing a net outflow of funds from Plaintiff. This started with the onset of the TCVA Program and further caused Plaintiff to have to raise prices decreasing volume and decreasing income. Plaintiffs are still suffering from the hardship caused by Getty's actions.

Matt Neiderman, Esquire
May 26, 2006
Page 4 of 4

15. I disagree with your characterization of Plaintiff's response and the Judge has already ruled on this. If you wish to explore this further you are free to do so in a deposition.

16. I do not understand your position on this point. Either you can explore this further in a deposition or we can meet and confer to discuss what further response you are looking for.

Document Request Responses:

No documents were withheld. They have all either been produced or available for copying but almost all of the documents are already in Getty's possession.

We have responded to this letter within the May 26, 2006 deadline set out in your letter of May 17, 2006. We believe that our responses to the Interrogatories were complete, but nevertheless have provided whatever additional information you have requested and once the expert damages report is produced, you should have whatever information we have.

It is our experience that judges do not like to be involved in discovery disputes. Please note that we responded to your discovery in a timely manner and responded to your further inquiries in a timely manner. If there is still any dispute after you have reviewed this letter, then we would suggest that we meet to discuss any differences on the discovery responses. I would suggest the week of July 10, 2006, which would give us an opportunity to review your discovery responses or August 9, 10, or 11, which would give you an opportunity to review our expert's damages report. If you have any questions on our response, please feel free to call me and, again, it would be our preference and I believe the Judge's preference that we work out any discovery disputes, or at least agree to disagree, and that the dispute cannot be resolved, before we schedule something before the judge. I look forward to hearing from you.

Very truly yours,

JOHN C. ANDRADE

JCA/ncs
cc:   HSMY, Incorporated